UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TONIA J. ROSE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CAUSE NO. 1:21-cv-00087-SLC |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, *sued as Kilolo Kijakazi,* | ) |
| *Commissioner of Social Security,*[1] | ) |
| | ) |
|     Defendant. | ) |

## OPINION AND ORDER

Plaintiff Tonia J. Rose appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB"). (ECF 1). For the following reasons, the Commissioner's decision will be remanded.

### I. FACTUAL AND PROCEDURAL HISTORY

Rose applied for benefits on February 26, 2019, alleging disability beginning September 6, 2018. (ECF 15 Administrative Record ("AR") 28, 159-69). Rose's claim for DIB was denied initially and upon reconsideration. (AR 81-98). After a timely request (AR 106-07), a hearing was held on June 17, 2020, before administrative law judge ("ALJ") Genevieve Adamo, at which Rose, represented by counsel, and a vocational expert testified (AR 44-80). On July 1, 2020,[2] the ALJ rendered an unfavorable decision to Rose, concluding that she is not disabled because she can perform a significant number of jobs in the economy despite the limitations caused by her impairments. (AR 28-39). Rose's request for review was

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, *see, e.g.*, *Butler v. Kijakazi*, 4 F.4th 498 (7th Cir. 2021), and thus, she is automatically substituted for Andrew Saul in this case, *see* Fed. R. Civ. P. 25(d).

[2] The ALJ's decision is dated "July 01, 2020June 26, 2020," both in the heading of the Notice of Decision and at the end of the decision. (AR 25, 39). The Appeals Council refers to the decision as dated July 1, 2020. (AR 1).

denied by the Appeals Council (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner, *see* 20 C.F.R. § 404.981.

Rose filed a complaint with this Court in March 2021, seeking relief from the Commissioner's decision. (ECF 1). In her appeal, Rose alleges that the ALJ: (1) failed to properly consider her mental impairments; (2) failed to properly analyze the opinion of her psychologist; (3) erred in evaluating her physical residual functional capacity ("RFC"); (4) erred in evaluating her subjective symptoms; and (5) erred at step five. (ECF 21 at 6-24).

At the time of the ALJ's decision, Rose was fifty-one years old (AR 51, 81), had a high school education (AR 51, 193), and had past relevant work as a construction worker (AR 38). In her application, Rose alleged disability due to multiple pelvic fractures and an impairment of the L5 vertebrae. (AR 192).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the ALJ applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner … are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III.  ANALYSIS

*A.  The Law*

Under the Act, a claimant is entitled to DIB if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to … last for a continuous period of not less than 12 months."  423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence:  (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether she has a severe impairment, (3) whether her impairment is one that the Commissioner considers conclusively disabling, (4) whether she is incapable of performing her past relevant work; and (5) whether she is incapable of performing any work in the national economy.[3]  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); *see also* 20 C.F.R. § 404.1520.  An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled.  *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).  A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled.  *Id.*  The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner.  *Clifford*, 227 F.3d at 868.

*B.  The Commissioner's Final Decision*

On July 1, 2020, the ALJ issued a decision that ultimately became the Commissioner's final decision.  (AR 28-39).  At step one, the ALJ concluded that Rose has not engaged in substantial gainful activity since September 6, 2018, the alleged onset date.  (AR 30).  At step two, the ALJ found that Rose

---

[3]Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite her limitations.  20 C.F.R. §§ 404.1520(a)(4), 404.1545(a).  The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of.  20 C.F.R. § 404.1520(a)(4).

has the following severe impairments:  status post left pubic rami fractures, status post sacral alar fracture, status post L5 transverse process fracture, lumbar degenerative disc disease, major depression, posttraumatic stress disorder, attention deficit disorder, and anxiety.  (AR 31).

At step three, the ALJ concluded that Rose did not have an impairment or combination of impairments severe enough to meet or equal a listing.  (*Id.*).  Before proceeding to step four, the ALJ determined that Rose's symptom testimony was not entirely consistent with the medical evidence and other evidence of record with respect to her limitations.  (AR 34).  The ALJ assigned Rose the following RFC:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except never climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; avoid unprotected heights; can perform work requiring simple instructions and routine, repetitive tasks; cannot perform work requiring a specific production rate, such as assembly-line work; can make only simple work-related decisions; can maintain attention and concentration for two-hour segments; could respond appropriately to predictable, routine changes in the workplace; could have frequent interactions with supervisors apart from what is necessary for general instruction, task completion, or training and frequent interactions with coworkers and with the general public.

(AR 33).  The ALJ found at step four that Rose is unable to perform any past relevant work.  (AR 38).  However, the ALJ found that jobs exist in significant numbers in the national economy that Rose can perform.  (AR 38-39).  Therefore, Rose's application for DIB was denied.  (AR 39).

### C. *Subjective Symptoms*

Rose asserts that the ALJ failed to properly analyze her subjective symptoms.  "In determining whether an individual is disabled, [the ALJ is to] consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record."  Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017).  An ALJ's consideration of a claimant's symptom testimony is entitled to special deference because the ALJ is in the best position to evaluate the credibility of a witness.  *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).  If an ALJ's determination is grounded in the record and she

articulates her analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988) (citation omitted), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (citation omitted), her determination will be upheld unless it is "patently wrong," *Powers*, 207 F.3d at 435. *See Ray v. Berryhill*, 915 F.3d 486, 490 (7th Cir. 2019) (stating that with respect to an adverse credibility determination, it is a "rare case in which the claimant can overcome the 'considerable deference' [the court] afford[s] such findings unless they are 'patently wrong'" (citation omitted)); *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's consideration of a claimant's symptom testimony because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness").

The regulations require the ALJ to analyze a variety of factors in making a determination of a claimant's subjective symptoms. These factors include: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medications; any additional treatments an individual receives for relief of symptoms; any non-treatment measures taken to relieve symptoms; and any other factors concerning an individual's functional limitations and restrictions due to symptoms. SSR 16-3p, 2017 WL 5180304, at *4.

The ALJ found that Rose's subjective symptoms "are not entirely consistent with the medical evidence and other evidence in the record" and "are inconsistent because the record does not support the severity of limitation the claimant alleges." (AR 34). The ALJ relies on Rose's ability to ambulate without an assistive device "on several occasions" and noted that she was instructed to discontinue her pain medication. (AR 36). The ALJ also noted that her permanent work restrictions provided by her doctor were consistent with the RFC. (*Id.*). The ALJ also found that despite Rose's allegations that she requires a cane to ambulate, the record does not reflect the need for constant use. (*Id.*). As for Rose's subjective complaints regarding her mental impairments, the ALJ noted that she was tearful, reported stress, and was depressed and irritable. However, the ALJ found that she was also cooperative; oriented to person, place, and time; had no preoccupation with death; had no ambivalence about dying; had good

eye contact and good memory; and had normal affect, appearance, and attitude. (*Id.*). The ALJ found that Rose did not require further limitation because "she did not require crisis care, inpatient care, and she did not display significantly aberrant behaviors." (AR 37). The ALJ also relied on her limited mental health treatment. (*Id.*). The ALJ also noted that despite complaints of pain, Rose's providers documented "mostly normal findings and at times did not have an explanation for her reports of limits and pain." (*Id.*).

The ALJ also discussed Rose's subjective symptoms when discussing her physical therapy assessment. The ALJ noted that despite reporting 10/10 pain with acute distress, her reflexes were normal. (AR 35). The ALJ also considered that the clinician stated her symptoms do not follow any clinical pathway in the clinician's experience, and that the clinician stated Rose "could be demonstrating some self limiting behaviors, exaggerations or conversion disorders." (*Id.*). Based on these notes, the ALJ found that Rose's failure to "give maximal effort during exams," along with her release from care providers, fails to support further limitations. (*Id.*).

As an initial matter, the ALJ's reliance on the physical therapist's findings is in error and mischaracterizes the evidence. The physical therapist noted that although Rose showed full strength, she was unable to ambulate without a severe gait deviation. (AR 530). The physical therapist also stated that she demonstrated symptoms consistent with a UMN lesion, but that she denied other symptoms consistent with such a lesion. (*Id.*). The physical therapist did note that Rose's complaints and symptoms do not follow "any clinical pathway" the therapist has experienced before, but the ALJ incorrectly assumes this means the physical therapist did not believe Rose's symptoms and complaints. (AR 35, 530). However, the physical therapist noted that despite no clearly defined cause, Rose demonstrated a myelopathic gait and ratcheting during MMT. (AR 532). The physical therapist then stated that Rose "could be demonstrating some self limiting behaviors, exaggerations or conversion disorders." (AR 532). The ALJ again assumes that this finding discredits Rose's symptoms and complaints. However, the ALJ misunderstands the statements made by the physical therapist.

6

"Cogwheeling," which the physical therapist noted, indicates not wanting to give a maximum effort, manifests in small, jerky movements, and it is intermittent and ratcheting. *See* https://healthsalubrity.com/cogwheel-rigidity (last accessed April 20, 2022). This is consistent with the therapist's findings of possible self-limiting behavior and ratcheting during ambulation. (AR 530, 533). This is also consistent with "guarding movement patterns" noted in other physical therapy treatment notes. (AR 539, 569). Rose continued to complain of pain during physical therapy. (AR 587). She also continued to show antalgic gait and cogwheeling. (AR 596). Moreover, self-limiting behavior or a lack of desire to give maximum effort may be an indication of pain, psychological issues, or attempts to manipulate test results. *Hepburn v. Sun Life Assurance Co. of Canada*, No. 2:11-CV-207, 2014 WL 1302538, at *11 (E.D. Tenn. March 31, 2014). There is no evidence in the physical therapist's report that Rose's self limiting behaviors were a result of an attempt to manipulate test results rather than a genuine expression of pain or a fear of reinjuring herself. On the contrary, her self limiting behaviors are consistent with her reports of pain.

Furthermore, the ALJ fails to understand conversion disorder in using it to discredit Rose's subjective symptoms. Conversion disorder does not, as the ALJ seems to assume, mean that Rose is manipulating the test results or that her complaints are exaggerated. Conversion disorder (otherwise called functional neurologic disorder) is a disorder that features neurological symptoms that cannot be explained by a neurological disease or any other medical condition. *See* https://www.mayoclinic.org/diseases-conditions/conversion-disorder/symptoms-causes/syc-20355197 (last accessed April 20, 2022). The symptoms of conversion disorder are real, despite the difficulty in determining their cause, and those symptoms can cause significant distress or trouble with functioning. *Id.* Consistent with Rose's physical therapy notes, struggles with walking is common with conversion disorder. *Id.* Conversion disorder can be caused by physical trauma, which is also consistent with Rose's situation. *Id.*

The ALJ improperly relied on the physical therapist's notations about Rose's self limiting behaviors and possible conversion disorder in dismissing her complaints of pain. The ALJ's conclusion

7

that the physical therapist's statements were reason to dismiss Rose's subjective complaints reflects her own lay opinion, and the ALJ failed to support this finding with substantial evidence.  *See Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (holding that an ALJ is not qualified to determine the significance of objective medical evidence and must rely on expert opinions); *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) ("ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves.").  This error requires remand.

The ALJ also erred in dismissing Rose's mental impairment symptoms by finding she did not require crisis care or inpatient care, that she did not display significantly aberrant behaviors, and that she has had limited mental health treatment.  (AR 37).  As an initial matter, the ALJ has cited nothing to support the assumption that crisis or inpatient psychiatric care is necessary to find Rose's symptoms to be as severe as she alleges.  "[T]here is no requirement in social security law that a claimant require hospitalization in order to demonstrate a severe mental impairment."  *Worzalla v. Barnhart*, 311 F. Supp. 2d 782, 796 (E.D. Wis. 2004).  Instead, the Seventh Circuit Court of Appeals has held that "[t]he institutionalization of the mentally ill is generally reserved for persons who are suicidal, otherwise violent, demented, or (for whatever reason) incapable of taking even elementary care of themselves."  *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015).  The ALJ may not improperly rely on a lack of inpatient or crisis care to dismiss a claimant's subjective mental health symptoms as the ALJ did here.

The ALJ further erred in relying on limited mental health treatment.  While it is true that Rose did not start her mental health treatment with "With Dignity Too" until December 2019, she maintained regular treatment from December 2019 through June 2020, where the medical record ends.  (AR 809-24).  Her treatment notes indicate that she was on multiple medications for her mental impairments with limited success in managing symptoms.  (AR 810-11, 814-15, 818-19, 822-23).  While she did not begin treatment until December 2019, the medical record shows consistent treatment after December 2019.  Rose was discharged from the Four County Counseling Center in April 2020 for "lack of engagement with services" (AR 803), but she was receiving treatment from With Dignity Too during the same period, (AR 803, 809-24).  There is no indication in the record why she did not pursue treatment with Four

County Counseling Center, but she received mental health treatment during that period of time from With Dignity Too.  Prior to her treatment from With Dignity Too, Rose was prescribed Klonopin for her mental impairments.  (AR 718).  Despite finding that Rose did not display significantly aberrant behaviors, Rose was tearful and crying during treatment and examinations, experienced anxiety attacks "off and on," appeared unkempt, and displayed extreme mood swings.  (AR 811, 814-15, 819, 823).  The ALJ erred in relying on a lack of "significantly aberrant behaviors" (without any indication of which behaviors would qualify as "significantly aberrant"[4]), as Rose's treatment notes indicate behaviors consistent with her reported symptoms.

In sum, the ALJ erred analyzing Rose's subjective symptoms and relied on her lay opinion in discussing physical therapy notes.  As a result, a remand is warranted for reconsideration of Rose's subjective symptoms and their impact on the RFC and medical opinion evidence.[5]

### IV.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order.

---

[4]Aberrant behavior has many definitions based on the context in which it is used.  For instance, the Aberrant Behavior Checklist ("ABC") "is a standardized rating scale used for assessing problematic behavior of individuals with developmental disabilities."  Aman, M., Norris, M., Kaat, A., Andrews, H., Choo, T., Chen, C., Wheeler, A., Bann, C. and Erickson, C., 2020. Factor Structure of the Aberrant Behavior Checklist in Individuals with Fragile X Syndrome: Clarifications and Future Guidance. *Journal of Child and Adolescent Psychopharmacology*, 30(8), pp.512-521.  Aberrant behavior can also relate to the misuse, di-version, or substance use disorder. https://www.lawinsider.com/dictionary/aberrant-behavior (last accessed April 20, 2022).  Aberrant behavior can also be used to describe a single criminal action that was committed without significant planning, was of limited duration, and indicates a deviation by the defendant from an otherwise law-abiding life.  *Id.*  As Rose is not a child or adult with a developmental disability, she is not being accused of a substance use disorder, and she is not a defendant, it is not clear what the ALJ would consider aberrant behavior.  Merriam Webster's Dictionary defines aberrant as "deviating from the usual or natural type," or "a person whose behavior departs substantially from the standard."  https://www.merriam-webster.com/dictionary/aberrant (last accessed April 20, 2022).  The ALJ has not indicated what behavior is necessary to qualify as "deviating from the usual or natural type" in a way that allows this Court to provide meaningful review.

[5]Because a remand is warranted for reconsideration of Rose's subjective symptoms and their impact on the RFC and medical opinion evidence, the Court need not reach Rose's remaining arguments.

The Clerk is DIRECTED to enter a judgment in favor of Rose and against the Commissioner.

SO ORDERED.

Entered this 20th day of April 2022.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge